And we'll call the next matter, which is 17-1328, Roselle v. Berger & Montague. Thank you, your honors. May it please the court, Paul DeMarco on behalf of the appellees. I'm sorry, rather the appellants. The district court's analysis of appellant's objection to lead counsel's fee allocation consisted of only one sentence, a mere 28 words. In those 28 words, the district court observed that appellant's objection, quote, raises straightforward legal issues, not factual disputes, unquote. But the district court never identified or discussed those legal issues, much less its reasons for resolving them, which leaves this court to guess on which legal ground it denied appellant's objection. I would like you to start with standing, because I have concerns about our jurisdiction based on standing. Could you please address that first? And let me just tell you, I'm having trouble on invasion of a legally protected interest, causation, and redressability. OK. First off, in this situation, standing is circumscribed by the court's order, fee order at 1389 to 90, in which it set up what the allocation test would be. And by that, you mean because the court used the term class counsel. Right. And you interpret that counsel not to mean the law firm that was representing the client, but rather every attorney that worked for the law firm. Well, the language that the court actually used was among the various class counsel which have participated in this litigation, which unquestionably describes the appellants, and that class counsel, or that lead counsel, must do so in such manner as lead counsel believes reflects each counsel's contribution to the prosecution of this litigation. That also includes appellants as among the participating counsel whose contributions to the prosecution of the litigation were at issue in the implementation of the fee order and in the objection that was raised, and are also at issue in this appeal. So if there is a stake in the allocation that lead counsel performed, there is a stake in the objection that was raised to that allocation, and there is a stake here today. Aren't you and the law firm both making a claim to the same time that was spent working on this case? The law firm put in for the time that was spent working on this case. And were they paid? They were paid. And we argue in our reply brief that because they received a lower multiplier from lead counsel, they were underpaid. Well, you don't have standing to object to the law firm's allocation. No, we do not object to that. And you participated in developing that law firm, your law firm, prior law firm's fee request. Right, at the request of lead counsel. But you participated, and they developed that. They included your fees or your time as part of that law firm that's no longer in existence, allocation. And you have no standing to object to that. So I'm also confused about how you fall into this. If you're class counsel, then why didn't you, if you are part of the class counsel group, why didn't you submit your own request? Actually, as part of class counsel, we joined in the aggregate fee application, which was due in January. You didn't submit your own fee application. No, our fee application. WSBC did. That's correct, Your Honor. WSBC submitted the time. But I would argue that the time and the load star for which WSBC was paid leaves room, because they received a lower multiplier, leaves room for recognition of our efforts as class counsel. Were your clients on salary at that law firm? Yes. And did they receive their salary? Yes, Your Honor. And were they employed by that firm or partners in the firm? No, they were only employed by the firm, not partners. All right. And they did not file a separate fee petition on their own behalf? Right, other than the joint fee petition in which two of the appellants signed on as class counsel. Well, they signed on on behalf of the law firm. Right, right. Not on behalf of WSBC, because at that point, WSBC was no longer operating as a law firm. It was not counsel of record anymore. They signed on. Ms. Rozelle and I signed on to the joint application as current class counsel in our new firm. In your new firm. So you signed on behalf of your new firm. That's correct. OK. I am not getting a lot of help with how you have standing here. If the court below were to go back and say, you've made a good point that more money should have been allocated to WSBC in part because of your efforts, wouldn't that money have to go to the receiver that's handling the affairs of WSBC to then be distributed the way the receiver deems equitable in light of all of the claims against WSBC? WSBC's receiver at the time received the allocation from lead counsel as to what it would be, that it would be based on a 1.6 multiplier well below the 2.41 that was granted in the fee order. They did not object to that. We had no standing to object on their behalf. They chose not to object and not to fight because they lacked the wherewithal to fight lead counsel. That does not preclude under the court's order, that does not preclude us as participating counsel from raising an objection to the allocation and pointing out that for two decades of work, we're not being recognized at all for our efforts. We don't have any stake. We have never made any claim to the law firm's stake. We are only asking under Washington public power and the other cases cited, Agent Orange and equity funding, that our contributions be rewarded consistent with the fee order that Judge Cain issued. Well, in Washington power, and I think that's the case where the court awarded, it mentions individual attorneys, but it actually makes the award to their law firms. It does because in that instance. So how does that support you here? Well, in our unusual situation, the law firm no longer exists as a law firm. Well, I understand, but that law firm has received an award through its receiver based on your time. It has been underpaid for our time. That you don't have standing to object to their underpayment, so we can't be talking about that. I think we don't have standing to object to it in a way that would acquire for the law firm that money. It doesn't preclude us from pointing out to the court the law firm was underpaid. But even if that law firm gets paid more, somehow, you know, we could get you there, it goes to the receiver and you have no claim to those funds apparently. If, yes, if it is. And that's not our issue. If it is the law firm's claim, but the law firm relinquished its claim by not filing an objection to its allocation. The law firm may have waived a right to challenge the amount, but it didn't somehow waive its claim. I mean, it got paid a significant amount of money, just not as much as you think it should have been paid. But nothing that the law firm does can create a right in you that didn't already exist. And, you know, I understand your frustration after all the years you put into the case. But as Judge Kelly points out, you were a salaried employee, not an owner of the business. And the law firm is the one who, if you look at Burlington, In re Burlington from the Seventh Circuit, they make it pretty clear. They reverse the trial court and say this award you made to individual attorneys needs to go to the law firm because the amount that's charged per hour or the amount that an attorney earns isn't direct to the attorney. It goes to the firm and the firm decides under their own methods how they distribute that. In Burlington, though, I think the Court of Appeals was sensitive to the district court's interference in intra-firm affairs and what the firm actually paid on to its associates for the time that they claimed in a fee award and that the fee award was received. But in our situation, that firm does not exist. There is no firm for us to go to to make that claim. Our only choice is to make that claim based on what the district court laid out, which is what were your contributions over two decades to the success? Do you think the district court order can be fairly read that with respect to every law firm that represented members of this class over its 30-year history, every individual attorney had to be assessed by class counsel, their performance, and the fee award divided among this class of maybe 3,000 attorneys and paralegals that contributed in some way? No, I don't think that's a fair reading of it. But in our situation, we don't. Well, what's to prevent an attorney in another firm to say, you know what? I think I did the bulk of the work here. And I wrote the briefs, and my senior counsel just came in and took a bow. I should get a bigger piece of it than he's getting. I think the distinction is, Your Honor, that the law firm was underpaid for the contribution. We start with the contribution that was made. The order requires that contribution to be assessed by lead counsel. Well, lead counsel assessed the contribution at a lower level than was justified. While we don't have standing to that, we can point that out. And in pointing that out, I think we can ask for that room that's left to be accounted for as part of our contribution. There's no question in the district court decision that said there were no factual disputes. So evidently, the district court does not quarrel factually with the contribution that the appellants made as lawyers. But to say that there is some sort of property interest that precludes the appellants from making a claim to a share of the allocation is to say something that is not supported by any property law. There's no fraudulent conveyance here. Well, if you, on your own behalf, I guess, get more than a 1.6, doesn't that result in a complete re-evaluation of everybody else? Well, there's only so many points. OK, what everyone else was supposed to be evaluated under was that meritocratic standard of contribution to the success of the litigation. And somebody decided that your law firm was entitled to a 1.6. That's right. And some of the law firm might have gotten a 1.9, et cetera. And I guess the money was distributed on that basis. That's correct. Actually, yeah. Where does the money come from, assuming you prevail and get an additional sum set aside for you? Doesn't that come back from the other folks that have already been paid? To the extent other folks were not paid based on their contributions, but they were paid, as we demonstrate, based on side agreements. We don't know, for example, how much the council paid itself. The council claimed a multiplier of 2.3. That would be $113.3 million. But if you look at the record in 348, 349, and 1489, it suggests that actually the council may have paid itself as much as $116,700,000. That extra $3.3 million, that is room to cover the success awards that we are asking for in this case. We do think that this is a strange situation that is unlike any that you see, even in the other three cases that we cited, because of the defunct law firm. When you saw what was happening and what happened, why didn't you, on either behalf of the law firm or on behalf of yourself, file a specific petition in the proceeding? With respect to the law firm's underpayment? Well, yeah, sure, the underpayment that you think you would have been entitled to from the law firm. We encouraged the law firm to file an objection. The law firm did not think it was well equipped. Why didn't you do it on their behalf? We didn't have standing to do it on their behalf. They were represented at the time by a receiver appointed by the court. We were mere former employees as to that law firm. So all that we could do is to point out the discrepancy in. Well, you could have filed a petition on behalf of you and the other two prior to the distribution. That's what we did. We filed our objection prior to the distribution, and we pointed out. You filed an objection, but you didn't file a fee petition on your own behalf. Not on our own behalf. The order that the court issued set a schedule for objections, and we objected on schedule. And you're out of time, and you used your rebuttal time. Thank you, Your Honor. Good morning, Your Honors. I'm sorry. Meryl Davidoff. I'm sorry. Speak into the microphone, please. Yes, sir. Meryl Davidoff of Berger and Monte, the police, and also the escrow agents below. We have a one page. I'd like to hand up at some point to Your Honors. It's just. Have you shown it to opposing counsel? I sent it to them on Friday. Is there any objection? That's fine. I think Your Honors hit the nail on the head by raising, initially, standing. The objectors do not have standing to object, and certainly there are three legs to the Lujan or to Neal standing discussion. The first leg is there has to be a legally protected interest. The objectors have no legally protected interest here. They acknowledge that all their time belonged to their former law firm, WSBC, except for 300 hours with their subsequent law firm. They acknowledge that that time belongs to the law firm. Actually, Mr. Goring, the receiver or the assignee, stated that these appellants, these objectors, assisted WSBC in filing its fee application. So they have no more standing than any other stranger to the case. Well, they contend they are entitled to a bonus. Well, Your Honor. So whether they are or not has to be determined, but that, it seems to me, just demonstrates injury in fact when they say they didn't get it. Well, they may feel that they may be able to assert that there is injury in fact, Judge Kelly, but they don't have a legally protected interest in those hours. Those 4,628 hours over a period of years belongs to the WSBC law firm and now its receiver. And there's no standing if there's no legally protectable interest. And that's the first leg of the three-leg standing stool. In effect, they're worse than strangers to the case. They are interlopers to the case. And the reason is, and I handed up this schedule, on January 12 of 2017, 10 law firms joined in a joint fee petition, 10 law firms, that was prepared by my firm and included affidavits or declarations from each of them. One of them was WSBC. That's the declaration that objectors, appellants, helped WSBC with. Another was MSD. But neither of those two firms have appealed their allocation. And they also received relatively generous allocations, the same as other law firms that worked on the case. So no firm withstanding, having joined in the January 12 joint fee petition, and those were the 10 firms that we as escrow agents were obliged to allocate fees among, has appealed to this court. There's no standing before this court because there's no objection before this court. They indicate that they are members of class counsel. Well, they were associated with class counsel. Lead class counsel was my firm, which devoted more than 75% of the time and more than 80% of the expenses over a 29-year period. But they were, along with the other eight law firms that filed applications, they were included in the class counsel, but only in the sense that they worked for a law firm, WSBC, which was part of class counsel. But you invited any firm, essentially, that was part of the class counsel group to file their fee applications. Right, but I'm sorry, Your Honor. I guess I'm trying to figure out how they were even entitled to file an objection, and I'm struggling with that. Well, our view below, Your Honor, Judge Moritz, is that they were not entitled to file an objection. You are a waiver, I think, right? By not filing a separate application. By not filing an application in accordance with the district court's deadline of January 12, 2017, which I might add was in a printed notice that was sent to thousands of class members. They waived it. And there are two cases that I think are relevant. One is the Dennis case from the Ninth Circuit. The other one, and I'm blanking on the name of the case, I think it's the Tennille case in this circuit. Sorry, Dennis v. Kellaut in the Ninth Circuit. And there is a similar case in this circuit against the Exxon Corporation. And in each case, in the Dennis case and in the Exxon case, the fee application was filed two weeks late. In each case, the Court of Appeals dismissed the appeal and held that the deadline had been missed. And those are the deadlines under Rule 54D and 23H for filing of fee applications. These particular objectors, these individual attorneys who never appeared in the case as individual attorneys, they appeared as part of one or another law firm, never filed a fee application, let alone two weeks late. What they did was they waited until the entire process in that outline I've handed up to your honors, January 12, March 31, the April 28 hearing, waited until the orders were entered. And then after all of that was done, and without having any legal entitlement or having filed any fee petition, they basically showed up at our doorstep and said, give us money. And we had already awarded what we felt, and which we still feel, the requisite amount of money for the efforts that these lawyers undertook on behalf of their two law firms. It is frustrating that we don't have anything from the district court. He simply denied the objection. The district court denied the objection without any statement. And we've been focusing here today on standing, but I didn't have the impression that the district court found no standing. Perhaps it did. And you yourself characterized the issue that they raised in their objection as being a legal issue. You characterized it several times in your pleadings below that way. It's problematic, a little problematic to me, that we don't have anything from the district court indicating why it denied the objection. I'm sorry, Your Honor. Let me address the second part first. The district court has presided over this case, actually, for more than 24 years now. Knew all the law firms was involved, knew their contributions, reviewed what they submitted on January 12th. And in terms of the district court's findings, we laid out before the district court everything on January 12th and subsequently. I can't think of a district judge who would be better equipped to appraise the contributions of counsel and what they did to a case than the judge did. I'm not suggesting that. I'm not at all suggesting that. I'm just saying I didn't see a single sentence as to the basis for the denial of the objection. Not in that particular order, but there's a prior order that rejects the idea of a special master that says that this is a pure legal issue. And the pure legal issue that we raised in opposing their objection was, can individual attorneys from a law firm claim, belatedly or not, claim a double bonus in effect, an additional bonus for the same time that their original law firm has submitted and which belongs to that law firm and has been claimed by an assignee? And the judge specifically did rule on that. And that is the legal issue. But there's just no rationale, is my point. Can we assume that it adopted your argument? I would think so, Your Honor. You submitted proposed orders in these cases. Yes, what happened was. In fact, you submitted this proposed order, denying the objection. Right, but we also said. It appeared to be verbatim from your submission with no rationale. I wouldn't agree that there wasn't a rationale, respectfully, Your Honor. I didn't say there wasn't. I'm just saying you submitted the order that denied the objection. The judge appeared to adopt that order. It contained no rationale. So I'm a little at a loss as to the basis for the district court's ruling. The order, that particular order, did not contain a rationale. The prior order, rejecting the court's original suggestion of a special master, did have a rationale. And the rationale was it was a purely legal issue. And the purely legal issue was, can individual attorneys. I understand. Ultimately, the court denied the objection and did not indicate why. And I think it was a purely legal issue. I don't disagree with that. The problem is it didn't indicate why. That's all I'm asking. I understand, Judge Moritz. I think there was so much in the record between January 12th and September when those final orders were issued that it was pretty apparent to everyone below why that was. And the pure legal issue has not been answered. I mean, nobody found a case where the money was awarded to the law firm that employed the attorney. We did find the Burlington case where it was reversed. And I would like to agree. I want to move you off of standing for a minute and look at the court's approval. Assume for a minute there is standing. And we're looking at the district court's approval of the fee award. I'm a little concerned that there was no close scrutiny here over this fee award if we were to get to that issue. It seems to me that, to a large extent, it suffers from a lot of the same problems as the fee award and high sulfur. Lack of transparency. Let's start with that. I mean, did the court know specifically how much each of the class counsel received? At page 1489 of the appendix, which is the brief that we filed on August 11th, 2017 before the district court, the specific allocations to each law firm are laid out there. And as in Copley Pharmaceutical, and I would commend both the district court decision there, and of course it was affirmed in an unpublished opinion of this court, that we filed the procedure, actually more than the procedure, in Copley Pharmaceutical. We discussed this with every one of the law firms. Every one of the law firms agreed upon their allocation. None of the law firms has appealed its allocation. But the law firms don't know what the other law firms got. Is that correct? I think that some of the, well, we cited the emails to and from Terry Coates, the managing partner of MSD, which did disclose some of that. I think by the time, by the end, by the time fees were going to be distributed, they pretty much did know. And should have known also, because, for example, Mr. Chesley, the former owner, 100% owner of Wade, Schneider, Bayless, and Chesley, he was a party to the agreements, among other firms, with Silver and Dabowski of Denver. So I don't believe there was a lack of transparency. I believe there was transparency, because I specifically, both orally and in writing, communicated with the person, the designated person, from each of the 10 law firms. None of them has appealed. So there's no argument about transparency, because nobody withstanding has appealed the issue of transparency. The court essentially, I mean, as I'm reading the order, and I think, again, I think you drafted this, that said that lead counsel shall allocate, it awarded the $150 million aggregate amount. And it said, lead counsel shall allocate and distribute such attorney fees among the various class counsel. And then it said, you can object if you want, basically. But my understanding is it essentially delegated its role to you to decide how those fees would be distributed and allocated among the various class counsel. And I don't see that there was any individual, as Judge McHugh indicated, any individual determination of any kind by the district court as to those individual allocations and whether they were appropriate. Well, the district court knew that my firm overwhelmingly bore the brunt. I understand that. But I don't see anything other than what you've submitted. Right, I understand. And as I said, at page 1489, long before the district court's final orders, those were disclosed to the district court in our brief filed on August 11th, 2017. No firm withstanding to dispute its allocation, whether it be transparency or allocation, has appealed. None of those firms is properly before this court. And there was eight months of proceedings, actually nine months of proceedings between January 12th when the fee petitions were filed and September when the court issued its final orders from which these appeals were filed. I see I'm almost out of time. I would just like to state that we filed a Federal Rule of Appellate Procedure 38 motion for sanctions and costs, also under 28 U.S.C. Section 1927. I would just like to submit those on the briefs if it would please the court. Thank you, Counsel. Thank you, Your Honors. You're out of time, so we will take this matter under advisement and we are going to take a short break and return to hear the last two matters.